ANNA DUNN, Appellant, *v.* JACOB HORNBECK, Respondent.

Where the parties to an executory agreement, innocent of itself but made void by statute, have willingly and fully performed it, without any wrong-doing, in fact, by them, and to the harm of no one, the law will not exact the undoing of it, or apply the statute to the harm of one of the parties, simply because some chance has kept in existence evidence of some of the credit by which the transaction has been carried out.

Statement of case.

Plaintiff and J., her husband, who was an alien, entered into an arrangement that he should make purchases of real estate with his own money, taking deeds therefor in her name; when he sold, she was to execute the deeds, and he to receive the purchase-money. Under this arrangement, J. purchased and paid for certain real estate, which was deeded to plaintiff; this was subsequently sold to defendant, and plaintiff conveyed to the purchaser. A note for a portion of the purchase-price, payable to plaintiff's order, was executed by defendant and delivered to J., to whom defendant subsequently paid it. In an action upon the note, *held*, that evidence of the arrangement was competent; and that, as there had been full performance of it, and a restoration to J. of his investment, in property, which he, as an alien, could lawfully hold, the note was his property, and his right thereto was not affected by the statute against secret trusts.

Also, *held*, that J., being the owner of the note, and receiving payment, it was immaterial whether it was paid by cash or by application of the amount upon a prior indebtedness from him to the maker.

In addition to the question of ownership, the court submitted to the jury the question of J.'s agency to act for plaintiff, and to receive payment of the note, charging, in substance, that unless they found either the one question or the other against plaintiff, she was entitled to recover. Plaintiff testified that she never, at any time, authorized her husband to receive payment. She, however, testified that he always did her business; that he received the money paid for her, and that payments made on account of the properties were made to him and invested in other real estate, always with her consent. *Held*, that this evidence, together with proof of the agreement under which the whole business was transacted, authorized a submission of the question of agency to the jury.

Plaintiff's counsel requested the court to charge that the fact that J. had not the note in his possession at the time defendant paid it was sufficient to put him on inquiry; the payment, therefore, was made at his own risk, and "is not good as against plaintiff." The court refused to charge differently from what it had charged. *Held*, no error; that the charge made was substantially as requested, save as to the last clause of the request, because conceding the payment was at defendant's risk, he was simply bound to show agency; and, as to the last clause, such a charge would have been erroneous.

(Argued December 10, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 7 Hun, 629.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*Lewis E. Carr*, for appellant. The admission of evidence, after it appeared that the note was given for land conveyed to defendant by plaintiff, showing, or tending to show, that plaintiff's husband furnished the money originally invested, was error. (*Schoonmaker* v. *De Witt*, 17 J. R., 304; *Worth* v. *Case*, 42 N. Y., 362, 369; *Tibbits* v. *Ayer*, H. & D. Sex., 174; *Turnbull* v. *Osborne*, 12 Abb. Pr. [N. S.], 200; *Kinsman* v. *Birdsall*, 2 E. D. S., 395; *Lake* v. *Tyson*, 6 N. Y., 461; *Defreest* v. *Bloomingdale*, 5 Den., 304; *Gould* v. *Chase*, 16 J. R., 26; *Cruger* v. *Armstrong*, 3 J. Cas., 5; *Conroy* v. *Warren*, id., 259; *Seely* v. *Engell*, 17 Barb., 530; *James* v. *Chalmers*, 6 N. Y., 209; *Dolfus* v. *Frasch*, 1 Den., 367; *Potter* v. *Chodsey*, 16 Abb. Pr., 146; *Dubois* v. *Hull*, 43 Barb., 26, 32; *Dooley* v. *Wolcott*, 4 Al., 406; Best on Ev., 678 [m. p.] Wood's ed.; 1 Greenl. on Ev., § 275 [13th ed.]; *Webb* v. *Rice*, 6 Hill, 219; *Halliday* v. *Hart*, 30 N. Y., 474, 493; *Durgin* v. *Ireland*, 14 id., 322, 325, 326; *Cook* v. *Eaton*, 16 Barb., 439; *Sturtevant* v. *Sturtevant*, 20 N. Y., 39; *First Bap. Ch.* v. *B'klyn F. Ins. Co.*, 28 id., 153.) The court erred in refusing to charge that it was immaterial from whence the money for the original investment came, and that if a note was given to plaintiff's order, it was her property, and in charging the converse of this request. (2 R. S., 1105, 1106 [6th ed.], 51, 52; *Garfield* v. *Hatmaker*, 15 N. Y., 475, 478; *Everitt* v. *Everitt*, 48 id., 218; *Brown* v. *Cherry*, 59 Barb., 638; *McCartney* v. *Bostwick*, 32 N. Y., 53, 59; *Foote* v. *Bryant*, 47 id., 544, 548, 549; *Jencks* v. *Alexander*, 11 Paige, 619; *Siemons* v. *Schurck*, 29 N. Y., 598, 610, 611; *Carr* v. *Carr*, 52 id., 251, 260; *Ocean Nat. Bk.* v. *Olcott*, 46 id., 12–16; *Ludlam* v. *Ludlam*, 26 id., 356, 360; *Wright* v. *Sadler*, 20 id., 320; *Leggett* v. *Dubois*, 5 Paige, 114; *Phillips* v. *Cramond*, 2 Wash. [C. C.], 441; *Proseous* v. *McIntyre*, 5 Barb., 425; 1 Story's Eq. Jur., § 371; *Baldwin* v. *Camfield*, 4 Halst. Ch., 891; *Van Zandt* v. *Davis*, 6 Ohio [N. S.], 52; *Jackson* v. *Forrest*, 2 Barb. Ch., 576; *Alsworth* v. *Cordty*, 31 Miss., 32.) A trust cannot be fastened upon an absolute convey-

ance by evidence that the grantee paid no consideration. (*Rathburn* v. *Rathburn*, 6 Barb., 98, 105, 106; *Dyer* v. *Dyer*, 1 W. & T. L. Cas. on Eq., 356; *Squire* v. *Harder*, 1 Paige, 594; 2 R. S., 135, § 6; *Dubois* v. *Hull*, 43 Barb., 26, 32; *Dooley* v. *Wolcott*, 4 Al., 406; Rest on Ev. [Wood's ed.], 678, m. p.) The facts that plaintiff was the wife of the one who paid the consideration for the land sold, and that the land has been sold and a note taken for a part of the purchase-price, do not affect the question. (15 N. Y., 475; 11 Paige, 619; *Curtis* v. *Fox*, 47 N. Y., 299; *Phillips* v. *Wooster*, 36 id., 412; *City Bk.* v. *Perkins*, 29 id., 554; *Rynders* v. *Crane*, 3 Daly, 339; *Rawson* v. *Penn. Cent. R. R. Co.*, 48 N. Y., 212; *Wolfe* v. *Scroggs*, 4 Abb. Ct. of App. Dec., 635.) Plaintiff's husband could only be shown to be her agent by proving that she had permitted him to hold himself out as such, and defendant had been thereby misled. (*Brindendecker* v. *Lowell*, 32 Barb., 9, 17, 18; *Murphy* v. *Winchester*, 35 id., 616; Story on Agency, § 443; *Morey* v. *Webb*, 58 N. Y., 350.) The fact that the husband made the bargain for the land, and received the money paid, was no evidence that he was defendant's agent to receive the money on the note. (*Doubleday* v. *Kress*, 50 N. Y., 410; *Hutchings* v. *Munger*, 41 id., 155; *Higgins* v. *Moore*, 34 id., 417; Story on Agency, § 98.) The court erred in refusing to charge that the absence of the note when paid put the maker on inquiry as to the husband's authority, and payment was therefore not good against plaintiff. (*Wardrop* v. *Dunlap*, 1 Hun, 325; *Doubleday* v. *Kress*, 53 N. Y., 410; *Van Alstyne* v. *National Commercial Bank*, 7 Tr. App., 24.)

*C. H. Winfield*, for respondent. Defendant had a right to show that the cause of action did not exist in plaintiff. (*Cummings* v. *Morris*, 25 N. Y., 632; *Brown* v. *Richardson*, 20 id., 474; *Clement* v. *Adams*, 12 How., 164; *White* v. *Brown*, 14 id., 284; *Billings* v. *Jane*, 11 Barb., 620; *Marsh* v. *Hoppock*, 3 Bosw., 478.)

FOLGER, J. This is an action upon a promissory note made by the defendant, by its terms payable to the order of the plaintiff, and not indorsed over by her. On the trial it was produced by her counsel. This made in the plaintiff a *prima facie* right of action.

The defense is set up that the plaintiff is not the real owner of the note, but that her husband John is. Another defense is, that the payment of the note had been made by the defendant to John, that he was then the owner and possessor of the note, or the agent of the plaintiff to receive the payment.

The first defense and the first branch of the second defense rest entirely upon this state of facts. I say this state of facts, for so I think that we may assume that the jury have found under the charge of the court. John was an alien. He wished to deal in real estate. So as to be able to give a title unaffected by his alienage, when he could make a sale, he made the arrangement with the plaintiff, that the deeds for what land he bought and paid for with his own money should be taken to her ; when he could sell she would execute a deed to the buyer ; John could take the money as his own; and so on and on, with any number of purchases and sales of lands. One of the parcels of land purchased and paid for by John, and deeded to plaintiff, was sold to defendant; plaintiff executed a deed thereof; for a part of the purchase-money defendant executed and delivered to John the note in suit.

The first point made by the appellant, is to the admission of testimony which would tend to show that arrangement and the performance of it. The objection was that it was immaterial. If the performance of that agreement was lawful when it became completely fulfilled, and then this note came from an execution of it, it was certainly material to the defenses above stated, to show that the arrangement existed; for it would show that the note was John's, and not Anna's. It was not an inquiry into what was the consideration, nor one to contradict or vary the terms of it, as is

urged; it was an inquiry which admits the note to have been good in its consideration; but goes to the legal or equitable ownership of it, at the time when it was made and when it was paid. It is the not uncommon thing of recognizing the validity in all respects of a chose-in-action, and of showing that the ostensible owner of it is not the real owner, and that another is. Thus it appears that the chief inquiry which needs to be made here is, whether such an arrangement can be made and carried out to a full performance of it by the parties to it, and by reason of the latter fact the results of the transaction be saved from the effect of. the statute against secret trusts. That there was a full performance, I think is shown from the proofs. The plaintiff, herself, testified that her husband owned the money that bought the lands; that the deeds were made to her, because he was an alien and could not hold property; that he did the bargaining and selling, and always received the payments. The testimony of John, in addition to that of the plaintiff, makes the matter clear, and brings the transaction with Hornbeck, the defendant, within the arrangement. I think that we may for the present assume that the jury found that there was full performance, though there was also another question of fact submitted to them. The charge submitted to them, that if the plaintiff executed the deed to the defendant, in pursuance of the arrangement. between her and her husband, through a sale which he had made to the defendant, doing the business in her name, for his (the husband) own benefit, that then the proceeds of the sale belonged to the husband. The verdict of the jury, being for the defendant, was an affirmative answer to the proposition of the charge; unless that verdict was based alone upon another matter submitted to them, which will soon be considered. The note sued upon was taken by the husband for part of the purchase-price of the land sold by him to the defendant. The land sold stood, when sold, in the name of the plaintiff. It had been bought by the husband with his money, and he had taken title to it to

her.  Thus the money of the husband had gone the round
contemplated for it by the arrangement.  It had started
from him, passed from personal to real estate in her name,
from real to personal estate again, and back into his posses-
sion in the form of the note in suit.  I know of no principle
which, when the parties to a void executory agreement have
willingly and fully made performance of it, undoes their act
in favor of any person not wrongfully affected thereby.  It
may be that had the plaintiff refused to convey, at some
time when John had contracted to sell, that he could not have
compelled her so to do.  It may be that had she insisted that
she would not deliver her deed to the vendee 'until she had
the purchase-price in her hands, holding it as her own, that
John could not have obtained it, or he, or any one standing
in such relation to him as does this defendant, have success-
fully claimed that he was an owner of it.  But this case is
not such.  Here is an agreement innocent in itself, and void
or reprehensible only as being technically against the letter
of one or more statutes.  It is fully kept and fulfilled with
the assent and to the satisfaction of all concerned, and to the
harm of no one.  The law will not exact the undoing of it,
nor use the chance circumstances, which have kept in
existence the evidence of some of the credit by which the
transaction was carried out, to apply the statute to the harm
of any of the parties, in the absence of any wrong-doing
in fact by them.  For see; the very performance of the
agreement satisfied the policy of the statutes, which the
making and part performance of it had offended.  It is the
policy of the statute against secret trusts, that the real
property of the proposed *cestui que trust* shall not be thus
hidden from those having lawful claims upon it.  As soon as
the agreement was performed by the conveyance of the land
to the defendant, the land was released from the secret trust
over it; the *cestui que trust* had no longer an interest of any
kind in it.  His interest was replaced in personal property,
and though the note was to the plaintiff as payee, while it
really belonged to him, that, the statute above named does

not forbid. The policy of the law, which fettered John in dealing with lands in his own name, was that foreigners should not hold land within our boundaries, to be used in direct or indirect ways, to the harm of the State or its citizens. But when the land was conveyed to the defendant, it came to the ownership of a citizen and resident of the United States. John then took title to the note, which, though an alien, he might lawfully do. Thus the law is now invoked to make invalid, acts which have restored property to the observance of its letter and its policy, and to the wrong of no one. Thus considering the case, the husband was the real owner of the note, and it matters not how he was paid, if he was a party to the mode of payment, whether by cash in hand, or by an application of the amount of the note upon prior indebtedness from him to the maker of the note. The propositions which have been started, as to the effect upon the asserted rights of the plaintiff in the matter, she being a married woman, it is not necessary to take up. We do not see any need, when the above view is conclusive, of treating of the question, whether she could take real estate by gift from her husband, or whether a gift was intended to her, so as to make the title in her, her separate estate, or whether the note was to her as payee. John retained the common-law right and property of a husband in it.

We could satisfactorily to ourselves dispose of this case upon the views we have already expressed. But the appellant claims that there was an error in the charge, in submitting to the jury the matter of an agency, which may have misled them. This was an issue not raised by the answer, and seems to have been made on the trial without objection. It is of some importance in itself, and because it has a bearing upon the question above considered ; for as there were two questions of fact submitted to the jury, we may not say with certainty upon which they found their verdict for the defendant. The court charged thus : "Now the question of agency comes up ;  *  *  *    the plaintiff

says she never authorized him to receive the money on this note, and he says he did all her business for her ; you have the facts and circumstances in regard to this note before you, and you must decide between them. * * * The fact of the existence of this note, and the circumstance of the writing of it, are simply brought to your notice as evidence of agency on the part of the plaintiff."

If the right of a jury to find the existence of an agency to do a particular act depended upon direct proof thereof, their usual power, would be very much circumscribed in that regard. In this case the plaintiff expressly testifies that she did not, at any time, authorize her husband to receive the payment of the note. It is probable that she never, in terms, gave him such authority. But she had before testified that he always did her business; that he received the money, received it for her, and that the payments that were made on account of the properties were paid to him ; that the money was received by him and invested in other houses and lots, with her consent always. Furthermore, there is the proof of the arrangement under which the whole business was transacted. Now, an agency or authority to act for another in a certain way, and to a certain extent, may be implied from the nature and extent of his usual or former employment. As then, it was in proof that the husband was used to do the business of the plaintiff always, and to receive her money for her, and to take the payments made on account of the properties, it was a legitimate inference that there was a tacit authority so to do, in the case of this note, though there may not have been authority given in terms to receive the payment of it.

. The plaintiff asked the court to charge : " That the fact that John Dunn had not the note in his possession at the time the defendant paid him was sufficient to put him on inquiry as to his authority to receive the money, when he knew the note was payable to her order; and a payment made under such circumstances by him was at his own risk, and is not good as against the plaintiff." The

court declined to charge differently from what it had charged. Did it err in so doing ? It had already charged that the plaintiff must recover, unless the jury should find that the business was done for the benefit of the husband, under the arrangement with the plaintiff, stated by the court, or unless there was an agency in the husband to receive the payment of the note. To have charged the request of the plaintiff would have been a substantial reiteration of that charge. Grant that the defendant was put upon inquiry, or what is the same thing, made payment of the note at his own risk, what risk did he take ? None other than that the facts of the case should turn out to be as the proofs show, and as the jury have found. As we have seen, the arrangement between the plaintiff and her husband was such, that when fully performed it was not in conflict with the statutes; and payment was the last act of performance, if made with her assent or authority; and, as we have seen, payment was received by the husband by her authority, according to the usual course of the business under the arrangement. If one who is, in the phrase of the law, put upon inquiry, neglects to inform himself of the facts, he subjects himself to all the consequences of the transaction which he should have inquired into, as the facts of it are afterwards made to appear. ( *Wiggin* v. *Bush*, 12 J. R., 306.) That is to say, the defendant, in the case in hand, must stand or fall by the legal effect of the transaction between the plaintiff and her husband, as it is shown on the trial. The charge of the court submitted it to the jury to find whether certain facts existed, and instructed them that if they found in the affirmative, the defendant was protected; and if they found in the negative, the plaintiff must recover. This was, in substance what the plaintiff asked of the court, except the last part of the request, " that a payment made was not good as against the plaintiff." And to have charged that would, in the view we have taken of the case, have been error against the defendant. To have acceded to the other part of the request would have been vain reiteration.

We find no error in the conduct of the trial. The judgment appealed from should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.